**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLINA ALEXA LEA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 3:22-cv-01581-RBM-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[Doc. 30]** |

Presently before the Court is Defendants City of San Diego, Ace Ybanez, Joshua Clabough, Jason Gonzalez, Joshua Leiber, David Burns, Kevin Cummings, and Miles McCarde's (collectively, "Defendants") Motion to Dismiss Plaintiff Kimberlina Alexa Lea's ("Plaintiff") First Amended Complaint ("Motion to Dismiss"). (Doc. 30-1.) Plaintiff, appearing *pro se*, filed a response to Defendants' Motion to Dismiss ("Response"). (Doc. 32.) Defendants did not file a reply.

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff filed this action on October 13, 2022 against the City of San Diego and certain officers related to the death of her father, Richard Price. (Doc. 1.) Defendants filed a motion to dismiss Plaintiff's initial complaint, which the Court granted on June 28, 2023. (Doc. 22.) The Court granted Plaintiff leave to amend. (*Id.* at 5, 7.)[1]

Plaintiff filed a First Amended Complaint ("FAC") (Doc. 23) in which she alleges that on July 9, 2020, Price was in an altercation with an individual who pulled a gun on him. (*Id.* at 2, 9.) Price then picked up his legal airsoft pellet gun for self-protection. (*Id.*) At the time of the incident, Price was under the influence of phencyclidine (PCP), methamphetamine, and amphetamine, which impaired his mental faculties and "prevented him from fully comprehending the situation." (*Id.* at 2, 8.) Plaintiff alleges that "[u]pon arrival at the scene, Defendant Sergeant Woodward, ID 6287, failed to properly identify [Price] and neglected to recognize his impaired state, choosing not to deescalate the situation." (*Id.* at 9.) Defendants then discharged over 40 rounds, causing a fatal gunshot wound to Price's head. (*Id.* at 2, 9.)[2]

Plaintiff filed this lawsuit on behalf of her father's estate and herself. (*Id.* at 3, 6.) Plaintiff brings five claims against Defendants: (1) use of excessive force in violation of 42 U.S.C. § 1983 (Count 1); (2) a § 1983 claim against the City of San Diego pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Count 2);[3] (3) battery (Count 3); (4) intentional infliction of emotional distress (Count 4); and (5) negligence/wrongful death (Count 5). (*Id.* at 1, 10–24.)

Plaintiff alleges that the City of San Diego's "policies, customs, or practices … contributed to the unconstitutional actions leading to [] Price's death." (*Id.* at 3.)

---

[1] The Court cites the CM/ECF pagination unless otherwise noted.
[2] The Court notes that on page two of the FAC, Plaintiff states that Price was shot 40 times; however, on page nine of the FAC, Plaintiff states that Defendants discharged over 40 rounds. This potential discrepancy does not affect the Court's analysis.
[3] This claim is commonly referred to as a *Monell* claim.

Specifically, Plaintiff alleges that the City of San Diego has a "consistent practice of inadequately investigating and addressing complaints of officer misconduct, including those filed against the officers involved in the incident with [] Price." (*Id.* at 14.) Plaintiff also alleges that "[t]he City of San Diego adheres to a policy or custom of racial profiling and bias…." (*Id.*)

Plaintiff also alleges that "Defendants' failure to adequately train and supervise their officers played a crucial role in the tragic outcome" and that Defendants "have failed to provide adequate training and supervision…concerning constitutional rights, de-escalation techniques, and appropriate force application." (*Id.* at 3, 15.) Specifically, Plaintiff alleges that "[t]he City of San Diego maintains policies and training procedures governing the use of force by its law enforcement officers[,]" which "delineate the circumstances in which force may be employed and the appropriate levels of force based on the exigency of the situation." (*Id.* at 13.) Plaintiff alleges that "[t]he first sergeant on the scene, instead of utilizing their training and negotiation skills, which should have been taught by the…City of San Diego, failed to de-escalate the situation." (*Id.* at 12.) Plaintiffs also alleges that "officers arriving on the scene without being called highlights the potential mishandling of the situation and further emphasizes the need for proper training and de-escalation techniques by the City of San Diego…." (*Id.*)

Finally, Plaintiff alleges that the City of San Diego and its officer demonstrate "a pattern of misconduct and deliberate indifference to the constitutional rights of citizens[,]" which "evinces a systematic issue within the systematic issue within the San Diego Police Department[.]" (*Id.* at 4, 13, 15, 16.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, all material factual allegations in the complaint are accepted as true and are construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

To avoid dismissal under Rule 12(b)(6), a complaint need not contain detailed factual allegations; rather, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.  DISCUSSION

**A.  Statute of Limitations**

Defendants contend that Plaintiff's FAC is barred by the applicable statute of limitations. (Doc. 30-1 at 9–11.) Defendants argue that all of Plaintiff's claims are subject to a two-year statute of limitations, that the incident underlying Plaintiff's claims occurred on July 9, 2020, and that her initial complaint was not filed until October 13, 2022, more than two years later. (*Id.* at 9–10.) Defendants also argue that even with the additional time to file her complaint granted under California Emergency Rule 9, Plaintiff's claim is still time-barred. (*Id.* at 10–11.)

In response, Plaintiff contends that her original complaint "was mailed off on July 7, 2022, well within the statute of limitations, and assigned case number 22-cv-1003-RBM-WVG by the Honorable Judge Montenegro." (Doc. 32 at 2, 8–10.) Case number 22-cv-

4

1003-RBM-WVG, filed on July 11, 2020, also concerns the wrongful death of Plaintiff's father, who was fatally shot by police on July 9, 2020. (Doc. 32-2 at 6–8.) Defendants did not file a reply brief responding to Plaintiff's statute of limitations arguments.

"Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citations omitted); *see also Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011) ("California's statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. § 1983.") (citations omitted); *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007) (holding California's statute of limitations "for assault, battery, and other personal injury claims" applies to § 1983 claims). In California, "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another," including claims for intentional infliction of emotional distress, must be filed within two years. Cal. Civ. Proc. Code § 335.1; *see also Moss v. Provident Life & Acc. Ins. Co.*, No. 09cv0674 DMS (WVG), 2009 WL 4043065, at *2 (S.D. Cal. Nov. 20, 2009) (claims for intentional infliction of emotional distress are governed by Cal. Civ. P. Code § 335.1). Thus, all of Plaintiff's claims are subject to a two-year statute of limitations.

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388. "[A]ccrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (finding that the petitioner could have filed suit as soon as the wrongful arrest occurred) (internal citations and quotation marks omitted). Therefore, the statute of limitations for Plaintiff's 42 U.S.C. § 1983 claims began running on July 9, 2022, the date the wrongful death allegedly occurred. Likewise, the statute of limitations for Plaintiff's tort claims for battery, intentional infliction of emotional distress, and wrongful death began running on July 9, 2020, the date of injury. *Mariscal v. Innovasis, Inc.*, No.

2:18-cv-08285-SVW-SK, 2019 WL 2970833, at *1 (C.D. Cal. May 17, 2019) (an action accrues on the date of injury) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988)).

California's tolling rules also apply to Plaintiff's claims. *See Nares v. City & Cnty. of San Francisco*, Case No. 22-cv-07497-AGT, 2023 WL 3102554, at *1 (N.D. Cal. Apr. 25, 2023) (applying California's tolling rules to § 1983 claims). "Under Emergency Rule 9(a), which the Judicial Council of California adopted, 'statutes of limitations ... that exceed[ed] 180 days [were] tolled from April 6, 2020, until October 1, 2020.'" *Id.* (quoting Cal. Rules of Court, App. I, Emergency Rule 9(a)). Thus, the statute of limitations for Plaintiff's claims did not begin to run until October 1, 2020 and Plaintiff's complaint must have been filed on or before October 1, 2022. *Id.* at *2 ("[a plaintiff] cannot benefit from tolling that predated his accrual date. Tolling pauses a statute of limitations that would otherwise be running."); *see also Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003) ("[T]he limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded.") (emphasis omitted).

Here, Plaintiff explains that her original complaint "was mailed off on July 7, 2022, well within the statute of limitations, and assigned case number 22-cv-1003-RBM-WVG by the Honorable Judge Montenegro." (Doc. 32 at 2.) Although this complaint does not specify any causes of action and was filed under a different case number, this complaint also concerns the allegedly wrongful death of her father and was filed on July 11, 2020. (Doc. 32-2 at 6–8.) Thus, Plaintiff's complaint appears to be timely. *Walton v. Guinn*, 187 Cal. App. 3d 1354, 1359 (Ct. App. 1986) ("For purposes of the statute of limitations, however, the commencement of the action relates back to the filing of the original complaint, except where a 'wholly different case is pleaded' by the amendment.") Further, Defendants have not filed a reply brief responding to Plaintiff's statute of limitations arguments. Therefore, at this juncture, the Court cannot find that Plaintiff's claims are barred by the statute of limitations.

**B.  Plaintiff's *Monell* Claim**

Defendants argue that dismissal of Plaintiff's *Monell* claim is appropriate because

1  "Plaintiff adds only conclusory statements to the FAC which appear to be addressed to a
2  'custom and practice' of racial profiling and discrimination and inadequate training []
3  without any factual support for the allegations." (Doc. 30-1 at 11–12.) Defendants also
4  contend that "[t]he official policy and failure to train allegations are entirely conclusions"
5  and that "Plaintiff has still not alleged any facts supporting her contention that the City has
6  'policies, customs, usages, and practices' regarding unlawful arrests, use of excessive
7  force, and covering up such conduct." (*Id.*)

8  In response, Plaintiff argues that she has alleged that "the City of San Diego adheres
9  to a policy or custom of racial profiling and bias" and "fail[s] to provide adequate training
10  and supervision" and that "these allegations are consistent with the court's guidance[.]"
11  (Doc. 32 at 3.) Plaintiff asserts that "over 300 American citizens, including my late father,
12  Richard Price, were deprived of due process at the hands of San Diego Police officers" and
13  that "in the past two decades, 217 individuals have tragically lost their lives following
14  encounters with San Diego-area law enforcement[.]" (*Id.* at 9.) Likewise, Plaintiff asserts
15  that in the United States there were 1,200 killings by police in 2022. (*Id.* at 9, 11.) Plaintiff
16  concludes that "[t]he statistics and reports [she] ha[s] cited serve to underline the existence
17  of systemic issues and provide substantial support for my allegations of unconstitutional
18  policies and practices within the San Diego Police Department" (*id.* at 9) and that "people
19  would be alive today…had the officers been trained[] and held accountable" (*id.* at 11).
20  The Court notes, however, that Plaintiff did not allege these statistics in her FAC.

21  Municipalities cannot be held vicariously liable under 42 U.S.C. § 1983 for the
22  actions of their employees. *Monell*, 436 U.S. at 694. "Instead, it is when execution of a
23  government's policy or custom, whether made by its lawmakers or by those whose edicts
24  or acts may fairly be said to represent official policy, inflicts the injury that the government
25  as an entity is responsible under § 1983." *Id.* To prevail in a civil action against a local
26  governmental entity, the plaintiff must establish "(1) that he possessed a constitutional right
27  of which he was deprived; (2) that the municipality had a policy; (3) that this policy
28  'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the

policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)).

A plaintiff may establish municipal liability under 42 U.S.C. § 1983 in one of three ways. "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation marks omitted) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Second, the plaintiff may establish that a governmental official with "final policy-making authority" ratified a subordinate's unconstitutional conduct. *Id.* at 1346–47 (citations omitted).[4] Third, a municipality may be held liable for inadequate training of its employees where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

Here, as set forth below, Plaintiff's *Monell* claim "lack[s] any factual allegations that would separate [it] from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

### 1.  Governmental Policies, Practices, and Customs

"A decision to adopt a particular course of action by the government's authorized decisionmakers surely represents an act of official government 'policy.' In other words, a policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Oviatt By & Through Waugh*, 954 F.2d at 1477 (internal quotation marks and citations omitted). A custom is a "widespread practice that, although

---

[4] This second avenue for liability is not at issue in the present case.

not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks and citation omitted).

Plaintiff alleges in the FAC that City of San Diego maintains policies governing the use of force by law enforcement officers, which delineate the circumstances in which force may be employed and the appropriate levels of force based on the exigency of the situation. (Doc. 23 at 13.) Plaintiff then alleges that the City of San Diego's "policies, customs, or practices…contributed to the unconstitutional actions leading to [] Price's death." (*Id.* at 3.) However, Plaintiff does not support this conclusory allegation with any specific factual allegations regarding which policy, custom, and/or practice contributed to Price's death and how. Plaintiff also alleges "[t]he City of San Diego exhibits a consistent practice of inadequately investigating and addressing complaints of officer misconduct[.]" (Doc. 23 at 14.) However, Plaintiff does not support this conclusory statement with any specific factual allegations regarding how the City of San Diego treats complaints of officer misconduct. Plaintiff also does not allege how the City of San Diego's failure to investigate or address complaints of officer misconduct led to Price's death.

Likewise, Plaintiff alleges that "[t]he City of San Diego adheres to a policy or custom of racial profiling and bias…as demonstrated in the targeting of Richard Lewis Price solely based on his appearance as a person of color." (*Id.*) However, Plaintiff does not allege that an official policy of racial profiling and bias was authorized by the City of San Diego's decisionmaker. Further, Plaintiff's allegations regarding the treatment of one individual are not sufficient to establish a "longstanding practice or custom," *Gillette*, 979 F.2d at 1346, that is so widespread that it is "permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis*, 485 U.S. at 127 (internal quotation marks and citation omitted).

### 2. Inadequate Training

To state a *Monell* claim for failure to train, a plaintiff must allege: (1) inadequate training and (2) deliberate indifference to the rights of persons with whom the untrained

9

employees come into contact. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* "A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities." *Id.* at 62 (internal quotation marks and citation omitted). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* at 61 (internal quotation marks and citation omitted). Typically, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks and citation omitted).

Here, Plaintiff alleges that "Defendants' failure to adequately train and supervise their officers played a crucial role in the tragic [death]" and, specifically, that Defendants "have failed to provide adequate training and supervision…concerning constitutional rights, de-escalation techniques, and appropriate force application." (Doc. 23 at 3, 15.) Plaintiff also alleges that "[t]he City of San Diego maintains…training procedures governing the use of force by its law enforcement officers[,]" which "delineate the circumstances in which force may be employed and the appropriate levels of force based on the exigency of the situation." (*Id.* at 13.) Plaintiff then alleges that "[t]he first sergeant on the scene, instead of utilizing their training and negotiation skills, which should have been taught by the…City of San Diego, failed to de-escalate the situation." (*Id.* at 12.) Plaintiff also alleges that "officers arriving on the scene without being called highlights the potential mishandling of the situation and further emphasizes the need for proper training and de-escalation techniques by the City of San Diego…." (*Id.*)

Plaintiff does not support these conclusory allegations with factual allegations regarding the training procedures currently in place, their deficiencies, and how the inadequate training resulted in Price's death. Plaintiff's allegations are also inconsistent.

On one hand, Plaintiff seems to allege that Defendants were trained in the appropriate use of force but failed to comply with the training. On the other hand, Plaintiff seems to allege that, had Defendants been trained properly, they would have known to de-escalate the situation rather than using excessive force. Thus, the need for more or different training is not "so obvious" and the inadequacy is not "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.[5]

Additionally, Plaintiff does not allege a "pattern of similar constitutional violations" resulting from the same inadequate training and cannot show that the City of San Diego had "actual or constructive notice" of an omission in its training program that they chose not to rectify. See *Connick*, 563 U.S. at 61–62. Thus, Plaintiff has not alleged deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Id.* at 61.

Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiff's *Monell* claim and **DISMISSES** Plaintiff's *Monell* claim without prejudice. However, the Court **GRANTS** Plaintiff leave to amend her FAC. *Cook, Perkiss & Liehe*, 911 F.2d at 247.

### C. Government Claims Act

Defendants argue that Plaintiff's claims for battery, intentional infliction of emotional distress, and wrongful death should be dismissed because she did not comply with California's Government Claims Act ("Claims Act"). (Doc. 30-1 at 12.) Specifically, Defendants argue that Plaintiff did not file a timely claim with the City of San Diego pursuant to California Government Code Sections 911.2(a) and 945.4 (*id.* at 13) and is not permitted to rely on her father's claim (*id.* at 14–16). Finally, Defendants argue that

---

[5] The Court is also hesitant to infer inadequate training in the present case. Here, Plaintiff alleges that her father was under the influence of several drugs and carrying an airsoft gun at the time of the incident. Therefore, it is not immediately apparent that Defendants' conduct may have constituted excessive force.

Plaintiff should not be granted leave to amend these three claims because Plaintiff is not able remedy her failure to comply with the Claims Act. (*Id.* at 16.)

In response, Plaintiff acknowledges that the original claim in this matter was filed in the name of her father but submits that this "naming discrepancy" does not render the claim invalid. (Doc. 32 at 3.) The claim form attached to Plaintiff's Response is dated January 8, 2021, identifies Price as the claimant, and states:

> On Thursday, July 9, 2020, in the 4200 block of Menlo Avenue in the San Diego neighborhood of City Heights, San Diego Police Department officers fatally shot Richard Lewis Price. The officers that opened fire on Mr. Price have been identified as David Burns, Joshua Clabough, Kevin Cummins, Jason Gonzalez, Joshua Lieber, Miles McArdle, and Ace Ybanez. … San Diego Police Officers used excessive deadly force resulting in the wrongful death of Mr. Price.

(Doc. 32-3 at 2.) Plaintiff argues that "a claim filed in name of the deceased can still be pursued through the appropriate legal representative of the estate" pursuant to California Probate Sections 9620, 9630, and 8400. (*Id.* at 3–4.) Likewise, in the FAC, Plaintiff alleges that a "claim was filed on 1/8/2021, indicating the City of San Diego's awareness of the incident. The claim was filed under Richard Lewis Price's name due to an error by Plaintiff's former attorney. Plaintiff, as Richard Lewis Price's daughter and representative of his estate, seeks to proceed as the proper representative of this case." (Doc. 23 at 8.)[6]

"A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented … not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2(a). "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented … until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board … ."

---

[6] The Court notes that, after filing her FAC, Plaintiff also filed a letter attaching her father's Claim Against the City of San Diego and her correspondence with her former counsel regarding his failure to name her as a "claimant." (Doc. 25.) However, this correspondence (*id.* at 5–13) is not material to the Court's analysis.

*Id.* § 945.4. In other words, "[t]he filing of a claim is a condition precedent to the maintenance of any cause of action against the public entity and is therefore an element that a plaintiff is required to prove in order to prevail." *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal. 4th 983, 990 (2012) (quotation mark and citation omitted) (emphasis omitted). "Each theory of recovery against the public entity must have been reflected in a timely claim." *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1060 (2013) (quotation and citation omitted). Additionally, "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1243 (2004).

"Where two or more persons suffer separate and distinct injuries from the same act or omission, each person must submit a claim, and one cannot rely on a claim presented by another." *Nelson v. Cnty. of Los Angeles*, 113 Cal. App. 4th 783, 796 (2003); *see also Nguyen v. Los Angeles Cnty. Harbor/UCLA Med. Ctr.*, 8 Cal. App. 4th 729, 732–734 (1992) (claim filed for injured child does not permit parents to sue for negligent infliction of emotional distress without filing their own claim for their separate and distinct injury); *Lewis v. City and County of San Francisco*, 21 Cal. App. 3d 339, 341 (1971) (wrongful death plaintiffs could not rely on decedent's pre-death tort claim for her personal injuries); *Castaneda*, 212 Cal. App. 4th at 1062–63 (finding trial court abused its discretion in denying state's motion for judgment on the pleadings with respect to decedent daughter's wrongful death cause of action because she never complied with Claims Act). "Because this rule is based on the purpose of the claim statutes—which is to provide sufficient information to enable the entity to adequately investigate claims and to settlement, if appropriate, without the expense of litigation—the statutory requirements have not been met by the person who has not filed a claim, and the doctrine of substantial compliance…does not apply." *Nelson*, 113 Cal. App. 4th at 797 (internal citation omitted). The Court addresses each of Plaintiff's state law claims separately.

### 1. Battery

As stated above, "[w]here two or more persons suffer separate and distinct injuries from the same act or omission, each person must submit a claim, and one cannot rely on a claim presented by another." *Nelson*, 113 Cal. App. 4th at 796. In the FAC, Plaintiff states a claim for "battery against the Plaintiff" and alleges that "the [p]laintiff suffered severe damages, including physical pain, suffering, and emotional distress." (Doc. 23 at 16–17.) Plaintiff also alleges that "[t]he [p]laintiff incurred economic damages, including but not limited to medical expenses and lost wages, in an amount to be proven at trial." (*Id.* at 17.) As pled, it is unclear whether Plaintiff is stating a claim for battery on behalf of herself or on behalf of her father. In this section of the FAC, Plaintiff seems to use the word "plaintiff" to refer to both herself and her deceased father. While any claim for battery brought in Plaintiff's individual capacity on behalf of herself must be dismissed due to her failure to comply with the Claims Act, Plaintiff may pursue a battery claim on behalf of her father. *See Deen v. City of Redding*, Civ. No. S-13-1569 KJM CMK, 2014 WL 1513353, at *6 (E.D. Cal. Apr. 11, 2014) ("[T]he injuries from the excessive force, battery, and negligence *are decedent's*…and so do not give rise to wrongful death damages [for an heir].") (emphasis added); *see also Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1276–79 (2006) (finding that a an heir's claim for wrongful death damages was timely but that several survivor causes of action, e.g., negligence, on behalf of the decedent were not).

### 2. Intentional Infliction of Emotional Distress

In *Nguyen*, a minor child filed a claim against a county hospital alleging that she sustained injuries because of negligent medical treatment. 8 Cal. App. 4th at 731. "[T]he plaintiff parents, appeal from a nonsuit order as to their causes of action for negligent infliction of severe emotional distress." *Id.* The parents did not file a claim naming themselves as claimants. *Id.* at 731–32. On appeal, the "parents argue[d] their claim was derivative of their daughter's claim and therefore they were entitled to rely upon the tort claim filed by their daughter." *Id.* at 733. The California Court of Appeal disagreed and held:

> The plaintiff parents' causes of action for negligent infliction of severe emotional distress arose out of the same transaction as their daughter's medical malpractice claim. However, the injuries allegedly suffered by the plaintiff parents were separate and distinct from those suffered by their daughter. The plaintiff parents' claims were for emotional injuries as witnesses to their daughter's injuries and for emotional injuries and economic damages as direct victims of the County's negligence. The alleged emotional injuries and economic damages were personal to the plaintiff parents. Therefore, the plaintiff parents could not rely on their daughter's tort claim.

*Id.* at 734. Here, like the parent plaintiffs in *Nguyen*, Plaintiff has filed a claim for the intentional infliction of emotional distress arising out of the same incident as her father's claims but based on her own separate and distinct emotional, physical, and economic injuries. (*See* Doc. 23 at 1, 19–22.)[7] These injuries are personal to Plaintiff, meaning she cannot rely on her father's Claims Act claim to assert her own claim for intentional infliction of emotional distress. *See Nguyen*, 8 Cal. App. 4th at 734. Therefore, the Court finds that plaintiff has not complied with the Claims Act and dismisses her claim for intentional infliction of emotional distress.

### 3. Wrongful Death—Negligence

In *Castaneda*, a decedent was in custody from approximately October 2004 to February 2007. 212 Cal. App. 4th at 1057–59. Nine days after his release, the decedent was diagnosed with invasive squamous cell carcinoma, which had already spread to his lymph nodes. *Id.* at 1059. He died a year later. *Id.* While still alive, the decedent presented a timely government tort claim and filed a single cause of action for violations of California Government Code Section 845.6 regarding inadequate medical care in custody. *Id.* The decedent's daughter "as heir and beneficiary of the estate…amended the complaint to allege a new, separate cause of action for wrongful death." *Id.* However, the daughter never filed a government tort claim. *Id.* The court explained that "[i]t has long been the

---

[7] As pled, it does not appear Plaintiff is seeking damages on behalf of her father's estate on this claim. The Court will treat Plaintiff's claim for intentional infliction of emotional distress as brought in her individual capacity on behalf of herself only.

law in California, that an action for wrongful death is wholly distinct from an action by the decedent, in his lifetime, for the injuries which ultimately cause his death." *Id.* at 1063 (quotation and citation omitted). The court held the decedent's daughter "could not utilize [the decedent's] tort claim for his predeath personal injuries as a substitute for her own wrongful death claim. Because [decedent's daughter] did not comply with the Act, she cannot state a cause of action." *Id.*

Here, Plaintiff alleges that "[a]s a direct and proximate result of [the City of San Diego's] negligence, [Price] suffered severe injuries, pain, and emotional distress, ultimately resulting in his death." (Doc. 23 at 24.) Plaintiff also alleges that "[a]s a result of [the City of San Diego's] negligence, [she]…suffered the loss of her father, emotional distress, and financial harm, including medical expenses and lost wages." (*Id.*) Thus, as pled, Plaintiff appears to be bringing a claim for wrongful death/negligence on behalf of both herself and her father. Under *Castaneda*, Plaintiff cannot utilize her father's Claims Act claim as a substitute for her own wrongful death/negligence claim, and her personal claim for wrongful death/negligence must be dismissed. However, Plaintiff may bring a negligence claim on behalf of her father. *See Deen*, 2014 WL 1513353, at *6; *Quiroz*, 140 Cal. App. 4th at 1276–79.

**4.     Conclusion**

"Statutorily prescribed prerequisites to statutory causes of action [are] jurisdictional and the failure to satisfy such preconditions [is] fatal to the action." *California State Univ., Fresno Assn., Inc. v. Cnty. of Fresno*, 9 Cal. App. 5th 250, 265 (2017). Additionally, the time to file a late-claim application has long passed. *See Munoz v. State of California*, 33 Cal. App. 4th 1767, 1779 (1995) ("When the underlying application to file a late claim is filed more than one year after the accrual of the cause of action, the court is without jurisdiction to grant relief….") (internal citation omitted). Therefore, the Court finds that amendment would be futile and **DISMISSES** Plaintiff's individual claims for battery, intentional infliction of emotional distress, and wrongful death/negligence brought on behalf of herself **with prejudice**. However, Plaintiff may pursue claims for battery and/or

wrongful death/negligence on behalf of her father. *See Deen*, 2014 WL 1513353, at *6; *Quiroz*, 140 Cal. App. 4th at 1276–79.

**D.   Federal Rule of Civil Procedure 12(f)—Motion to Strike**

Defendants argue "Plaintiff asserts allegations that are unnecessarily emotionally charged, redundant to the point of unnecessarily repeating other averments already set forth, have little, if any bearing on the claims being asserted." (Doc. 30-1 at 18.) Therefore, Defendants request that the Court strike page 3, paragraph 5 and all references to punitive damages; page 4, paragraph 8 as conclusory; page 4, paragraphs 9 and 10 as duplicative and irrelevant; page 8, paragraph 7 as irrelevant; page 10, paragraphs 14/15 as irrelevant and inflammatory; page 12, paragraph 7 as conclusory; page 12, paragraph 8 as irrelevant and inflammatory; page 13, paragraphs 3 and 4 as irrelevant and inflammatory; page 14, paragraphs 6 and 7 as irrelevant and inflammatory; page 15, paragraphs 9 and 10 as irrelevant and inflammatory; page 16, paragraph 11; page 20, paragraph 31 as inflammatory and irrelevant; page 20, paragraph 32 as irrelevant; page 21, paragraphs 33 and 34 as irrelevant; and page 22, paragraph 36 as inflammatory. (*Id.*)

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). "Motions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). Further, "allegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant." *Id.*

As a preliminary matter, the Court **DENIES** Defendants' motions to strike page 4, paragraph 5 and page 12, paragraph 7 as conclusory. Conclusory allegations are not subject to a motion to strike under Rule 12(f), which only permits motions to strike "redundant, immaterial, impertinent, or scandalous matter." Likewise, the Court **DENIES** Defendants'

motion to strike page 16, paragraph 11 as Defendants have not provided any basis in their motion. The Court also **DENIES** Defendants' motion to strike page 3, paragraph 5 and all references to punitive damages because "a Rule 12(f) motion is not the proper method by which to strike a claim for punitive damages." *Fitch v. Galland, No*. 1:16-CV-00489-JLT, 2017 WL 1231869, at *6 (E.D. Cal. Jan. 6, 2017) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010)).

Defendants move to strike all of the remaining claims as irrelevant or inflammatory; however, as stated above, "[m]otions to strike are generally not granted unless…the matter…could have no possible bearing on…the litigation," and "allegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant." *LeDuc*, 814 F. Supp. at 830. None of the claims identified by Defendants are irrelevant or inflammatory to the point of being prejudicial. Thus, the Court **DENIES** Defendants' motion to strike in its entirety.

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. Specifically, the Court:

1) **GRANTS** Defendants' Motion to Dismiss Plaintiff's *Monell* claim, **DISMISSES** the claim **without prejudice**, and **GRANTS** Plaintiff leave to amend her *Monell* claim;

2) **GRANTS** Defendants' Motion to Dismiss Plaintiff's individual claims for battery, intentional infliction of emotional distress, and wrongful death/negligence brought on behalf of herself and **DISMISSES** those claims **with prejudice**; and

3) **DENIES** Defendants' Motions to Strike pursuant to Federal Rule of Civil Procedure 12(f).

Plaintiff may file an amended complaint on or before **Tuesday, March 19, 2024** which cures the *Monell* claim deficiencies noted above. Plaintiff is cautioned that conclusory allegations unsupported by specific factual allegations are insufficient to properly comply

18

3:22-cv-01581-RBM-VET

with the Federal Rules of Civil Procedure. **If Plaintiff fails to file an amended complaint on or before March 19, 2024, the case will proceed on Plaintiff's remaining claim for excessive force in violation of 42 U.S.C. § 1983 (not specifically addressed by the Defendants in their Motion to Dismiss) and any claim for battery or negligence brought on behalf of Plaintiff's father.**

**IT IS SO ORDERED**.

DATE:  March 6, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE